DULCEDO SMITH v. JOSEPH J. ALLEN, Admr.

(Filed 9 March, 1921.)

**1. Limitation of Actions—Pleadings—Appeal and Error.**

In an action against the administrator of the deceased where there are two separate causes of action set out, one to recover the value of services rendered the intestate by the plaintiff, and the other to recover taxes paid for him by the plaintiff, it is necessary that the defendant plead the statute of limitations as to the second cause of action in order to avail himself of it as a bar to the plaintiff's recovery thereon.

**2. Limitation of Actions—Contracts—Wills.**

The statute of limitations does not begin to run until the death of the intestate on his contract with the plaintiff, that if plaintiff performed certain services for him during his life he would compensate him therefor in his will.

**3. Appeal and Error—Harmless Error—Evidence—Deceased Persons— Statutes.**

The admission of evidence concerning transactions or communications with deceased persons, forbidden by our statute, is, at least, harmless error when both parties to the action have testified to them, without objection, and the objection upon which the exception is based, was subsequently taken.

Appeal from *Lyon, J.,* at the September Term, 1920, of Warren.

This is an action to recover for personal services rendered by the plaintiff to the intestate of the defendant, and certain taxes paid by the plaintiff.

There was evidence tending to prove that plaintiff, a nephew of defendant's intestate, lived alone with the intestate for about fifteen years, until intestate's death, 25 July, 1919, at the advanced age of 89 years; that for the last seven years of this time the intestate was bedridden; and for the last three years he was totally helpless, having no control of his body, his limbs, his bladder, or his bowels; that plaintiff waited on him, cleaned him, made his fires, sat up with him, changed his bed, brought his meals, and attended to his business. The intestate was in mature life, a man of business, but came back to his farm near Manson when past 70, and told plaintiff that if plaintiff would stay there with him and take care of him and attend to his business as long as he lived he would give plaintiff the place, about 500 acres of land, unculti-

vated, growing up in pines.   Deceased also stated several times that he
had made a will giving plaintiff the place.   It was shown that he
refused to pay the taxes, saying it was plaintiff's, and plaintiff must pay
them; and that plaintiff paid the taxes from 1906 to his uncle's death.
When people would ask leave to hunt or to buy trees, deceased would
say, "See Dulce; it is his"; or words to that effect.

After his death no will was found, and this action was brought to
recover the value of plaintiff's services.

The timber on the land was sold in the spring of 1920 by the heirs
for $37,000.   The land itself was worth six or seven thousand more,
and deceased had in bank $3,000, which was not diminished during his
long illness.

Jarvis Allen, a colored man, born on the place, helped to nurse de-
ceased, and being refused payment, sued for $2,000, and was paid $1,250
without a trial.

Plaintiff, a dentist, a man of education, demanded $5 per day for his
services for the seven years during which the deceased was helpless,
alleging the contract, the performance thereof by him, and the breach
thereof by the death of the intestate without payment or provision for
plaintiff.

Plaintiff also added a cause of action for the taxes paid by him, and
interest thereon.

The defendant denied liability, and pleaded the statute as to all but
three years of the services; but did not plead the statute against the
claim for taxes.

The jury returned the following verdict:

"1. Did O. G. R. Smith agree with plaintiff that if the plaintiff would
remain with him at his home and care for him and look after his busi-
ness, and that if he, the said plaintiff, would do so, he, the said O. G. R.
Smith, would at his death compensate him for his services and atten-
tions?   Answer: 'Yes.'

"2. Did the plaintiff remain with the said O. G. R. Smith at his home
and care for him and look after his business, as alleged in the complaint?
Answer: 'Yes.'

"3. Did the said O. G. R. Smith, at his death, compensate the plaintiff
for the services and attentions of the said plaintiff to him which were
rendered as alleged in the complaint?   Answer: 'No.'

"4. What sum, if any, is the plaintiff entitled to recover for such
attention and service?   Answer: $12,783.75."

"5. What sum, if any, is the plaintiff entitled to recover for the taxes
paid by the plaintiff for the said O. G. R. Smith?   Answer: '$574.66.' "

Judgment was entered upon the verdict in favor of the plaintiff, and
the defendant appealed, assigning the following errors:

"1. Exception is to the court permitting plaintiff to testify what he did for the intestate.

"2. Exception is to testimony as to taxes paid for deceased for more than three years before his death.

"3. Exception is to the charge of the court on the 4th issue refusing to hold that the claim of plaintiff is barred as to all arising more than three years before intestate's death.

"4. Exception is to refusal to charge that all taxes paid more than three years before intestate's death are barred of recovery by the statute of limitations.

"5 and 6. Exceptions to the verdict and judgment, respectively."

*T. T. Hicks & Son, Daniel & Daniel, B. B. Williams, and W. P. Harvey for plaintiff.*

*Tasker Polk, William H. and Thomas W. Ruffin, and A. C. and J. P. Zollicoffer for defendant.*

ALLEN, J. The second, third, and fourth exceptions may be considered together, and the fifth and sixth are purely formal.

The second and fourth are to the refusal to hold that the claim for taxes paid more than three years prior to the death of the intestate is barred by the statute of limitations, and it is a complete answer to these exceptions that the claim for taxes was alleged as a separate and distinct cause of action and that the defendant did not plead the statute of limitations to this claim.

The third exception is answered by the finding of the jury upon the first issue, it being well settled in this State, "That where services are rendered upon an agreement that compensation is to be made at death, that the amount does not become due until death, and that the statute of limitations does not begin until that time." *Helsabeck v. Doub,* 167 N. C., 206.

The evidence is ample to sustain this finding, and there is no exception by the defendant to the contrary.

The defendant did not ask the court to hold, nor did he request a prayer for instruction, that there was no evidence to support the finding upon any of the issues.

The first exception is to permitting the plaintiff to testify that he would have to be up with intestate "at night, every night, anywhere from two to ten times, to move him, lift him, and change his position. He could not move himself after 1916. Nobody stayed with him at night but me. On August, 1912, to July, 1919, I could have easily earned from $8 to $10 per day. I paid taxes on that land from 1906 until the old man died."

This objection to evidence was upon the ground that the plaintiff was a party and that it involved a transaction with the deceased.

It will be seen, however, that the plaintiff had already testified without objection to all of those facts and that afterwards on cross-examination the defendant examined him minutely covering every phase of the answer objected to, and further that the administrator was examined as a witness and testified as to these transactions.

If, therefore, the objection could have been sustained, in the first instance, the evidence is harmless because the same facts were testified to by the same witness without objection and the administrator having testified as to the transactions the plaintiff would be permitted to do so.

We have examined the record carefully and it appears to us that the verdict is right and that the claim of the plaintiff is meritorious, and has been established in accordance with law.

No error.