DOC HORACE ETHERIDGE, JR., EXECUTOR OF THE ESTATE OF DOC HORACE ETHERIDGE, SR., SUBSTITUTED PETITIONER v. E. RAY ETHERIDGE, UNMARRIED, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANNIE MAE G. ETHERIDGE, DECEASED; FRED G. ETHERIDGE, AND WIFE, MARY REED ETHERIDGE; DOC HORACE ETHERIDGE, JR., AND WIFE, IRIS ETHERIDGE, SUBSTITUTED PETITIONER

No. 821SC852

(Filed 7 June 1983)

**Wills § 61.6— dissent from will—allocation by commissioners—trial findings incorrect**

    Where a husband dissented from his wife's will, where the Commissioners made allocation of decedent's property, and where the trial judge was required only to determine if the allocations made by the Commissioners were reasonable, fair and just, the trial judge erred in ordering the sale of all the real and personal property of the estate of decedent.

APPEAL by respondents from *Smith, Judge.* Order entered 14 July 1982 in Superior Court, CURRITUCK County. Heard in the Court of Appeals 21 January 1983.

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White and John H. Hall, Jr., for respondent appellants.*

*Trimpi, Thompson & Nash, by C. Everett Thompson and John Trimpi, for petitioner appellees.*

BECTON, Judge.

I

Introduction

The resolution of this appeal, though simple, requires an understanding of a lengthy, at times bitterly contested, special proceeding which spans eight years.[1]

This action began on 3 July 1975 when Doc Horace Etheridge, Sr., (Doc, Sr.), the surviving spouse of Annie Mae Etheridge, filed a dissent from the will of his wife. Doc, Sr. sought an order (a) establishing his right to dissent from the will of his wife; and (b) partitioning in kind the real property of his wife and "allocating to [him] his intestate's share[,] one third (33 1/3%) of said real property. . . ."

Now, after the appointment of three different sets of Commissioners, the filing of four separate Commissioners' reports, hearings before four different superior court judges, and two prior appeals to this Court, this matter is before us again to determine the propriety of Superior Court Judge Donald Smith's 14 July 1982 findings, conclusions, and Order. In his Order, Judge Smith said: "[t]he Commissioners' Report, filed February 5, 1981, in all respects, is fair, reasonable, just and accurate as to valuation; but in accordance with the case of *Allen v. Allen*, 258 N.C. 305, [128 S.E. 2d 385 (1962)] the Court finds that the properties, both real and personal, cannot be divided, and all of said properties ought to be sold for division." After a thorough review of the facts and applicable law, we conclude that the trial court's reliance on *Allen v. Allen* was done under misapprehension of law and constitutes reversible error.

II

Facts and Procedural History

When Annie Mae Etheridge died on 5 January 1975, she was the owner of at least eleven separate tracts of land totalling ap-

---

1. According to the appellees, "the controversy this actively litigated case and its offshoots have generated in Currituck County or the tremendous toll it has taken on the citizens of Currituck County, the court system and officials, and the Etheridge family" cannot be adequately described. Moreover, litigation fees and court-related expenses have been substantial.

proximately 2,379 acres. By her will, dated 24 May 1974, Annie Mae Etheridge devised the bulk of her real property to her two sons, Ray and Fred. Her husband, Doc, Sr., was granted a life estate in the "home place and farm, known as the Shaw Farm," and her other son, Doc, Jr., was granted a life estate in a certain portion of the Shaw Farm upon the death of Doc, Sr. Doc, Jr.'s sons, Joe and Owen, were granted a remainder interest in that portion of the Shaw Farm to which their father, Doc, Jr., had been granted a life estate.

Anticipating a possible dissent from her will, and explaining the apparent imbalanced basis upon which she disposed of her land, Annie Mae Etheridge stated in her will:

## ITEM X

If my husband, Doc Horace Etheridge, Sr., dissents from this my Last Will and Testament, then, in such event, my son, Doc Horace Etheridge, Jr. and his sons, Joe Etheridge and Owen Etheridge shall not receive any legacies and devises or any benefits whatsoever under this my Last Will and Testament and such legacies and devises and benefits in the event of such dissent shall pass to my sons, E. Ray Etheridge and Fred G. Etheridge, in fee simple absolute forever, that is to say, my said sons, E. Ray Etheridge and Fred G. Etheridge, shall receive all legacies and devises and benefits, in fee simple absolute forever, which I have hereinbefore bequeathed and devised unto my said son, Doc Horace Etheridge, Jr. and his sons, Joe Etheridge and Owen Etheridge, if my said husband dissents from this my Last Will and Testament.

## ITEM XI

In the preparation of this my Last Will and Testament I have been conscious of the fact that there has been a forced sale of the interests of my sons, E. Ray Etheridge and Fred G. Etheridge in and to the Flora Farm and the Gregory tract, and I have therefore considered it equitable and it is equitable to give and devise my home and home farm, to wit, the Shaw Farm, as I have hereinbefore done in this my Last Will and Testament.

In a petition filed 3 July 1975, the husband, Doc, Sr., in his first cause of action, sought to establish his right to dissent from the Will and, in his second cause of action, sought an actual division of the property so that his one-third intestate share would be allocated to him. Before any action could be taken on his petition, Doc, Sr. died on 15 November 1975; however, his son, Doc, Jr., was substituted as petitioner on 24 November 1975, and the interested parties stipulated, on 26 November 1975, that Doc, Sr. had a right to dissent from the will. The stipulation did not affect the second cause of action in the petition seeking to allocate a one-third intestate share to Doc, Sr.

After filing responsive pleadings, Ray and other parties in interest filed, on 16 March 1976, a motion for summary judgment, contending:

> that they are entitled to judgment as a matter of law declaring the validity of Item X of the Last Will of Annie Mae G. Etheridge . . . declaring that E. Ray Etheridge is entitled to the home, its contents, and the pasture, comprising a part of the Shaw Farm, as called for by Item IV of the Will of Annie Mae G. Etheridge and as explained by Item XI of her Will, and that E. Ray Etheridge and Fred G. Etheridge are entitled to the remainder of the Shaw Farm as called for and explained in said items of said Will . . . following the settled principle that the Will shall be so construed that the dissent shall affect the devisees and legatees to the least possible degree, and that the general scope or plan of distribution be carried out and effectuated so far as possible.

After a hearing on the motion for summary judgment, Judge Herbert Small, presiding judge, found as a fact that "[t]he petitioner prays for an actual partition of said land and it is agreed by all parties and counsel that an actual partition of said lands in accordance with law can be made without injury to any of the parties" and, after making appropriate conclusions of law, "ordered, adjudged and decreed":

> 2. That Item X of the Will of Annie Mae G. Etheridge is valid and therefore Doc Horace Etheridge, Jr. and his sons, Joe Etheridge and Owen Etheridge, shall not receive any devises or other benefits under said Will.

3. That the lands devised to Doc Horace Theridge, Jr. and his sons, Joe Etheridge and Owen Etheridge, under the Will of Annie Mae G. Etheridge, or so much thereof as may be necessary, shall first be allocated toward satisfaction of the intestate share of Doc Horace Etheridge, Sr. in the lands of Annie Mae G. Etheridge, and thereafter if further allocation is necessary and proper to complete the satisfaction of the intestate share of Doc Horace Etheridge, Sr. in the lands of Annie Mae G. Etheridge, then such further allocation shall be borne pro-rate [sic] by E. Ray Etheridge and Fred G. Etheridge.

Doc, Jr. appealed Judge Small's summary judgment order to this Court. This Court affirmed. *See, In the Matter of the Estate of Annie Mae G. Etheridge, Deceased,* 33 N.C. App. 585, 235 S.E. 2d 924 (1977), *disc. review denied,* 293 N.C. 253, 237 S.E. 2d 535 (1977).

Without reciting the interim procedural history from 1977 until May 1982, we turn our attention to Judge Donald Smith's 14 July 1982 order confirming the last Report of Commissioners.

### III

Appealing respondents, Ray Etheridge, Fred Etheridge and wife Mary Etheridge, contend that the legal effect of Judge Smith's 14 July 1982 Order is: (1) to vacate and overrule the prior rulings of other superior court judges; (2) to render meaningless this Court's opinion in *In Re Etheridge*; and (3) to set aside the will of Annie Mae Etheridge to the same extent as though a *caveat* to her will had been sustained.

The prior superior court rulings and this Court's opinion in *In Re Etheridge assumed,* without deciding, that an actual partition of the property could be made.[2] Thus, there were no established "law of the case" or *res judicata* principles confronting Judge Smith. Judge Smith's order does, however, effectively

---

2. Judge Small's initial Order in 1976 merely recited that the parties and counsel "agreed . . . that an actual partition of said land in accordance with law can be made without injury to any of the parties." Because Judge Small was ruling on appealing respondents' Motion for Summary Judgment, he never had before him any Commissioners' Report. *A fortiori,* this Court, in affirming Judge Small's judgment and order did not address the issue whether the property could be divided fairly.

nullify the will of Annie Mae Etheridge. And, it is this feature of the case that distinguishes it from *Allen v. Allen* and *Taylor v. Carrow*,[3] 156 N.C. 6, 72 S.E. 76 (1911).

Both *Allen* and *Taylor* involved partition proceedings among tenants in common who could never agree whether there should be a partition sale or an actual partition. The case *sub judice* is not a proceeding under N.C. Gen. Stat. § 46-1 (1976) among tenants in common to partition land by sale or actual division; it is a proceeding designed solely to allocate and set apart, *by actual partition*, the intestate's share of a dissenting spouse in the lands and personal property in the estate of his deceased wife.

Making specific reference to "[t]he statutory procedure set forth in G.S. Chapter 46, Article I," — the partition of land between tenants in common statute — the *Allen* Court said:

> Actual partition must be on the basis of the division made by commissioners and not otherwise. In a *de novo* hearing before the judge, where the question is whether the report of the commissioners should be confirmed, the judge may confirm or he may vacate and enter appropriate interlocutory orders. However, the judge may not, based on his findings as to what would constitute an equitable division, adjudge a partition of the land different from that made by the commissioners.
>
> Here, the Clerk had confirmed the report of the commissioners. The question before Judge Carr was whether the division made by the commissioners was fair and equitable. [Citation omitted.] If so, a final judgment or decree confirming the report of the commissioners should have been entered. If not, the report of the commissioners should have been set aside; and, if set aside, the court by interlocutory order, should haave ordered a new division by commissioners or, if the facts justified, a partition sale.

258 N.C. at 309, 128 S.E. 2d at 388.

Again, this is not a proceeding under G.S. Chapter 46, Article I. The *Allen* case itself reminds us that the law discussed in any

3. Spelled *Tayloe v. Carrow* in 72 S.E. 76.

particular case is set within the framework of the facts of that case. *Id.*

The numerous reports of Commissioners, hearings, and appeals do not necessarily suggest that a division in kind cannot be made fairly. They may suggest that the parties will not be satisfied with any particular division, but that provides no legal basis to nullify the will of Annie Mae Etheridge. In *In Re Etheridge*, this Court said that the dominant intent expressed in the Will of Annie Mae Ehteridge is controlling so long as it can be carried out and leave the dissenting spouse with a prescribed fractional interest in value in the estate. *Id.* at 588, 235 S.E. 2d at 927. The reports of all the Commissioners and the rulings by all the superior court judges who heard this matter before it reached Judge Smith were based on this guiding principle.

This case must end at some point. Although Judge Smith commendably sought to eliminate the strife and certain dispute arising about ownership and property lines, he was required only to determine if the allocations made by the Commissioners were reasonable, fair and just. He did more. He ordered the sale of all the real and personal property of the estate of Annie Mae Etheridge. His reliance on *Allen v. Allen* was misplaced, and his order constitutes prejudicial and reversible error. Even though Judge Smith found that the *valuations* of the Commissioners were fair, reasonable, just and accurate, we cannot remand this matter with directions that the Clerk confirm the Commissioners' Report, because Judge Smith did not determine if the *allocation*—the division—was fair. This remains to be done, and this case is remanded for disposition not inconsistent with this opinion.

Remanded.

Judges WEBB and PHILLIPS concur.